## UNITED STATES v. 155 CASES OF INTOXICATING LIQUOR.

(Circuit Court of Appeals, Second Circuit. February 18, 1924.)

No. 278.

1. Witnesses ⟨key⟩21—Order committing witness for contempt reviewable by writ of error.

An order committing a witness for contempt for refusal to answer questions is properly reviewable by writ of error.

2. Witnesses ⟨key⟩304(3)—Immunity to witnesses given by Prohibition Act effective to exclude claim of privileges.

Prohibition Act, tit. 2, § 30 (Comp. St. Ann. Supp. 1923, § 10138½q), providing that no witness who testifies in obedience to a subpoena in any suit or proceeding for violation of the act "shall be prosecuted or subjected to any penalty or forfeiture for or on account of any transaction, matter

or thing as to which * * * he may so testify or produce evidence," satisfies the constitutional guaranty against self-incrimination, and a witness cannot be excused from testifying on a claim of privilege.

3. **Witnesses** ⬤⇒21—**Witness may be committed for refusal to answer questions before commissioner.**

Where questions which a witness refused to answer before a commissioner were certified to the District Court, that court with the record before it has power to commit the witness for contempt until he answers the questions.

In Error to the District Court of the United States for the Southern District of New York.

Libel by the United States against 155 cases of intoxicating liquor. From an order committing them for contempt, John Brophy and others bring error. Affirmed.

Writ of error to the United States District Court for the Southern District of New York. Two libels were filed, one against 155 cases of intoxicating liquor, and the other against the motor schooner Tomoka, for forfeiture. The Ocean Trading Company, Limited, appeared as claimant. The plaintiffs in error, members of the crew of the motor schooner Tomoka, appeal from an order adjudging them in contempt for failure to answer questions while witnesses for libelant, under subpœna. Affirmed.

Felder & McCrossin, of New York City (Edward J. McCrossin, of New York City, of counsel), for plaintiffs in error.

William Hayward, U. S. Atty., of New York City (Francis A. McGurk and John Holley Clark, Jr., both of New York City, of counsel), for defendant in error.

Before HOUGH, MANTON, and MAYER, Circuit Judges.

MANTON, Circuit Judge. The plaintiffs in error are members of the crew of the motor schooner Tomoka and were arrested in criminal proceedings and held for removal to New Jersey. They were duly served with subpœnas for taking their testimony by deposition in support of the libels of the defendant in error against 155 cases of intoxicating liquor and the motor schooner Tomoka. They were examined as witnesses and refused to answer questions propounded to them in these proceedings which were taken pursuant to sections 863–864 of the United States Revised Statutes (17 Stat. 89; 31 Stat. 183 [Comp. St. §§ 1472, 1473]). The master and his crew were on board and in charge of the schooner when she was arrested and the seizure made. The subpœnas were made returnable before the United States commissioner. They refused to answer the questions put to them by the commissioner, who was appointed to take the testimony de bene esse, because they said their answers might tend to incriminate them, thereby violating their constitutional privilege under the Fifth Amendment. The commissioner issued a certificate certifying the questions asked and the refusals to answer. They were:

"By Mr. McGurk: Q. Why did you give the name Downey when you were arrested? A. I refuse to answer.

⬤⇒For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

"Mr. McCrossin: I would also like to add to that, before you rule, an objection upon the part of counsel for the witness, an objection upon the ground that the question itself is improper and incompetent, and assuming something not proven, and not before the court.

"Mr. McGurk: This is all preliminary. I am entitled to it.

"Mr. McCrossin: I respectfully except.

"A. I refuse to answer.

"Q. Were you aboard the schooner Tomoka on November 24, 1923, or thereabouts? A. I refuse to answer.

"The Commissioner: I direct you to answer.

"Mr. McCrossin: Exception.

"A. I still refuse.

"The Commissioner: You should take into consideration that a similar ruling in a similar matter has been made, and it seems to me that you are required by the ruling of this court to answer the question, and you have no reasonable grounds under the ruling made by Judge Mayer to fear prosecution by reason of any answers you may give.

"Q. Were you the master of the schooner Tomoka? A. I refuse to answer.

"The Commissioner: I direct you to answer.

"A. I still refuse.

"Q. Do you own the schooner Tomoka? A. I refuse to answer that question.

"The Commissioner: I direct you to answer.

"Mr. McCrossin: Exception.

"A. I still refuse.

"Q. Do you own the cargo of liquor aboard the Tomoka? A. I refuse to answer.

"The Commissioner: I direct you to answer.

"Mr. McCrossin: Exception.

"A. I still refuse.

"Q. Notwithstanding the fact that you are offered full and complete immunity as provided in section 30 of the National Prohibition Act? A. I do.

"Q. Were you arrested aboard the schooner Tomoka? A. I refuse to answer.

"The Commissioner: I direct you to answer.

"Mr. McCrossin: Exception.

"A. I still refuse.

"Q. Notwithstanding the fact that you are offered full and complete immunity as provided in section 30 of the National Prohibition Act? A. I do.

"Q. Don't you know you were arrested? A. I refuse to answer.

"The Commissioner: I direct you to answer.

"Mr. McCrossin: Exception.

"A. I still refuse.

"Q. Notwithstanding the fact that you are offered full and complete immunity as provided in section 30 of the National Prohibition Act? A. I do.

"Q. Where did you sail from at the time your vessel was seized? A. I refuse to answer.

"The Commissioner: I direct you to answer.

"Mr. McCrossin: Exception.

"A. I still refuse.

"Q. Notwithstanding the fact that you are offered full and complete immunity as provided in section 30 of the National Prohibition Act? A. I do.

"Q. I show you, Mr. Brophy, agreement or articles for a Canadian foreign seagoing ship, dated September 26, 1923, at Nassau in the Bahama Islands signed John Brophy, and call your attention to the first line on the second page, and ask you if the name John Brophy there is your name—take a look at that? A. I refuse to answer.

"The Commissioner: I direct you to answer.

"Mr. McCrossin: Exception.

"Q. Notwithstanding the fact that you are offered full and complete immunity as provided in section 30 of the National Prohibition Act, you refuse to answer? A. I do.

"Q. I call your attention to the signature on the first page just preceding the date, and ask you if that is your signature? A. I refuse to answer.

"The Commissioner: I direct you to answer.

"Mr. McCrossin: Exception.

"A. 1 still refuse.

"Q. Notwithstanding the fact that you are offered full and complete immunity as provided in section 30 of the National Prohibition Act, you still refuse? A. I do.

"Q. Where did you obtain the liquor aboard the schooner Tomoka? A. I refuse to answer that.

"By the Commissioner: Q. On what ground do you refuse to answer? A. On the gound that it may incriminate or degrade me.

"The Commissioner: I direct you to answer the question.

"Mr. McCrossin: Exception.

"A. I refuse to answer.

"By Mr. McGurk: Q. How many cases of liquor did you have aboard the schooner Tomoka at the time you left Nassau? A. I refuse to answer that question.

"The Commissioner: I direct you to answer that question.

"Mr. McCrossin: Exception." (Fols. 4-15.)

[1] Thereupon the defendant in error moved to punish each of them for contempt and asked for their commitment. From an order adjudging them in contempt and directing their commitment to prison, they sued out this writ.

[2] A writ of error is the proper remedy to review the order here. Union Tool Co. v. Wilson, 259 U. S. 111, 42 Sup. Ct. 427, 66 L. Ed. 848; Bessette v. W. B. Conkey Co., 194 U. S. 324, 24 Sup. Ct. 665, 48 L. Ed. 997; Grant v. United States, 227 U. S. 74, 33 Sup. Ct. 190, 57 L. Ed. 423; Gompers v. Buck Stove Co., 221 U. S. 418, 31 Sup. Ct. 492, 55 L. Ed. 797, 34 L. R. A. (N. S.) 874; Freed v. Central Trust Co., 215 Fed. 873, 132 C. C. A. 7. Section 30 of the Volstead Act provides (41 Stat. L. 317 [Comp. St. Ann. Supp. 1923, § 10138½q]):

"Sec. 30. No person shall be excused, on the ground that it may tend to incriminate him or subject him to a penalty or forfeiture, from attending and testifying, or producing books, papers, documents, and other evidence in obedience to a subpœna of any court in any suit or proceeding based upon or growing out of any alleged violation of this act; but no natural person shall be prosecuted or subjected to any penalty or forfeiture for or on account of any transaction, matter, or thing as to which, in obedience to a subpœna and under oath, he may so testify or produce evidence, but no person shall be exempt from prosecution and punishment for perjury committed in so testifying."

The defendant in error contends that the provisions of this act afford complete immunity and that a refusal to answer the questions was contemptuous. The plaintiffs in error argue that the immunity clause of this act does not satisfy the constitutional guarantee against self-incrimination afforded them and refer to Arndstein v McCarthy, 254 U. S. 71, 41 Sup. Ct. 26, 65 L. Ed. 138, and Counselman v. Hitchcock, 142 U. S. 547, 12 Sup. Ct. 195, 35 L. Ed. 1110, contending that section 30 does not guard against prosecution for crimes which may be discovered as a result of the testimony given by the witnesses here when they testify in the proceedings instituted by the defendant in error against the cases of liquor and the ship. The claim is that "immunity is only for the prosecution for transactions, matters and things about which they testified," and it is said that the "testi-

mony which they give can be used against them in a prosecution for a crime which may be detected as a result of their testimony." We observe no danger impending against the defendants in error if they answer the questions as required. The Arndstein Case involved immunity granted under section 7 of the Bankruptcy Act (Comp. St. § 9591), and the Counselman Case involved section 860 of the Revised Statutes. The latter provides:

"No pleading of a party, nor any discovery or evidence obtained from a party or witness by means of a judicial proceeding in this or any foreign country, shall be given in evidence, or in any manner used against him or his property or estate, in any court of the United States, in any criminal proceeding, or for the enforcement of any penalty or forfeiture: Provided, that this section shall not exempt any party or witness from prosecution and punishment for perjury committed in discovery or testifying as aforesaid."

Section 7 of the Bankruptcy Act, which was considered in the Arndstein Case, provides:

"The bankrupt shall (1) attend the first meeting of his creditors, if directed by the court or a judge thereof to do so　*　*　* and (9) when present at the first meeting of his creditors, and at such other times as the court shall order, submit to an examination concerning the conducting of his business *　*　* but no testimony given by him shall be offered in evidence against him in any criminal proceeding."

The Arndstein Case held that the filing of schedules in bankruptcy did not waive the privilege of the Fifth Amendment, for it could not be said that the questions propounded, considered in the light of the circumstances there disclosed, might be answered with entire immunity. And that section 7 of the Bankruptcy Act was not a substitute for the protection of the Fifth Amendment, since it did not prevent the use of his testimony to search out other evidence to be used in evidence against him or his property. The Supreme Court had occasion to consider the Counselman Case in Brown v. Walker, 161 U. S. 593, 16 Sup. Ct. 644, 40 L. Ed. 819. The question presented there involved the immunity clause in the interstate commerce act (Act of February 11, 1893, 27 Stat. 443 [Comp. St. § 8577]), which provides:

"No person shall be excused from attending and testifying or from producing books, papers, tariffs, contracts, agreements and documents before the Interstate Commerce Commission, or in obedience to the subpœna of the Commission, *　*　* on the ground or for the reason that the testimony or evidence, documentary or otherwise, required of him, may tend to criminate him or subject him to a penalty or forfeiture. But no person shall be prosecuted or subjected to any penalty or forfeiture for or on account of any transaction, matter or thing, concerning which he may testify, or produce evidence, documentary or otherwise, before said Commission, or in obedience to its subpœna, or the subpœna of either of them, or in any such case or proceeding. *　*　*　*"

And in distinguishing between the two classes of statutes, the court said:

"The act is supposed to have been passed in view of the opinion of this court in Counselman v. Hitchcock, 142 U. S. 547, to the effect that section 860 of the Revised Statutes, providing that no evidence given by a witness shall be used against him, his property or estate, in any manner, in any court of the United States, in any criminal proceeding, did not afford that

complete protection to the witness which the amendment was intended to guarantee. The gist of that decision is contained in the following extracts from the opinion of Mr. Justice Blatchford (pp. 564, 585), referring to section 860: 'It could not, and would not, prevent the use of his testimony to search out other testimony to be used in evidence against him or his property, in a criminal proceeding in such court. It could not prevent the obtaining and the use of witnesses and evidence which should be attributable directly to the testimony he might give under compulsion, and on which he might be convicted, when otherwise, and if he had refused to answer, he could not possibly have been convicted.' And again: 'We are clearly of the opinion that no statute which leaves the party or witness subject to prosecution, after he answers the criminating question put to him, can have the effect of supplanting the privilege conferred by the Constitution of the United States. Section 860 of the Revised Statutes does not supply a complete protection from all the perils against which the constitutional prohibition was designed to guard, and is not a full substitute for that prohibition. In view of the constitutional provision, a statutory enactment, to be valid, must afford absolute immunity against future prosecutions for the offense to which the question relates.'

"The inference from this language is that, if the statute does afford such immunity against future prosecution, the witness will be compellable to testify."

### And again:

"The danger of extending the principle announced in Counselman v. Hitchcock is that the privilege may be put forward for a sentimental reason, or for a purely fanciful protection of the witness against an imaginary danger, and for the real purpose of securing immunity to some third person, who is interested in concealing the facts to which he would testify. Every good citizen is bound to aid in the enforcement of the law, and has no right to permit himself, under the pretext of shielding his own good name, to be made the tool of others, who are desirous of seeking shelter behind his privilege."

The court held that the section of the Interstate Commerce Act was a grant of immunity and in effect a substitute for the protection afforded by the Fifth Amendment. See, also, United States v. Skinner (D. C.) 218 Fed. 872. In Heike v. United States, 227 U. S. 131, 33 Sup. Ct. 226, 57 L. Ed. 450, Ann. Cas. 1914C, 128, the defendant was convicted for violation of the Sherman Act (Comp. St. § 8820 et seq.) and contended that because of evidence given he was granted immunity and that his conviction could not be sustained. The court, referring to the Act of February 25, 1903, chapter 755 (32 Stat. 854, 904 [Comp. St. § 8578]), which grants immunity to witnesses against prosecution for matters testified to in investigation for violations of the Sherman Law, held that the act was not intended as a gratuity to crime and is to be construed as far as possible as coterminous with the privilege of the person concerned. There the court said:

"In favor of the broadest construction of the immunity act, it is argued that when it was passed there was an imperious popular demand that the inside working of the trusts should be investigated, and that the people and Congress cared so much to secure the necessary evidence that they were willing that some guilty persons should escape, as that reward was necessary to the end. The government on the other hand maintains that the statute should be limited as nearly as may be by the boundaries of the constitutional privilege of which it takes the place. * * * We see no reason for supposing that the act offered a gratuity to crime. It should be construed, so far as its words fairly allow the construction, as coterminous with what otherwise would have been the privilege of the person concerned. * * *

"There is no need to consider exactly how far the parallelism should be carried. It is to be noticed that the testimony most relied upon was the summary made from the books of the company by its servants, at the petitioner's direction, and simply handed over by him; that apart from the statute the petitioner could not have prevented the production of the books or papers of the company, such as the summary was when made, or refused it if he had the custody of them, and that the decisions that established the duty to produce go upon the absence of constitutional privilege, not upon the ground of statutory immunity in such a case."

The depositions in the case at bar were taken in libels filed for violations of the Prohibition Act, and therefore the defendants in error were granted full immunity of any crimes that might be divulged by reason of inquiry into the circumstances which are indicated by the questions asked. The libel is against the cases of intoxicating liquor and charges forfeiture of the liquor for violation of sections 584, 592, of the act of Congress approved September 21, 1922 (42 Stat. L. 858, 980, 982 [Comp. St. Ann. Supp. 1923, §§ 5841h–3, 5841h–11]), conjointly with the National Prohibition Act. The sections of the act mentioned are counterparts of paragraph H, § 11, of the Tariff Act of October 3, 1913 (38 Stat. L. 114, 184), and section 2809 of the Revised Statutes, both of which were repealed by the Act of September 21, 1922.

[3] It is argued that there is no power resting with the commissioner to direct answers to the questions and that the questions should have been asked before the District Judge. The procedure followed before the commissioner is consistent with the practice indicated in the opinion of Lacombe, C. J., in Butte & B. Mining Co. v. Montana Purchasing Co. (C. C.) 139 Fed. 843. In this case the questions which the witness refused to answer were presented to the District Judge and are recited in the order of commitment, and it is clear from the order that the court passed upon the questions which he refused to answer, and directed his commitment until such time as the witness makes answer to the question so propounded and is willing to submit to such further examination as the defendant in error may deem sufficient for the prosecution of its libel.

The purpose of section 30 of the Prohibition Act is plainly to prevent the guilty from concealing their misdoings so that enforcement of the law and punishment of at least some of the guilty may be possible. It opens the mouths of some. Statutory immunity accomplishes this and has due regard for the constitutional provisions as the valuable prerogative of every citizen. Congress has long been recognized as having the power to enact such statutes within the provisions of the Constitution. Heike v. United States, supra; Brown v. Walker, supra.

We see no error in the result below.

Orders affirmed.