## UNITED STATES v. DICKEY et al. *

(District Court, W. D. Missouri, W. D. December 2, 1924.)

No. 6812.

1. Constitutional law ⬚90—Freedom of the press violated by limitation on publication of income tax returns.

The provision of Revenue Act June 2, 1924, § 1018, that "it shall be unlawful for any person to print or publish in any manner whatever not provided by law any income return, or any part thereof, or source of income, profits, losses, or expenditures appearing in any income return," is not incident to the taxing power, but an attempt to say in what manner the public shall acquire information made available by section 257 (b), requiring lists of taxpayers and the amount of their payments to be kept for public inspection in the office of col-

*Judgment affirmed 45 S. Ct. —, 69 L. Ed. —.

lectors, and is void as in violation of Const. Amend. 1, prohibiting the making of laws abridging the freedom of the press.

2. Internal revenue ⬚47—Indictment held not to charge illegal publication of "income return."

An indictment for publication in a newspaper of the name of an income taxpayer and the amount paid by him, obtained from the lists kept in the office of a collecter for public inspection, as required by Revenue Act June 2, 1924, § 257 (b), held not to charge an offense under section 1018, making it unlawful to publish an income return or any part thereof.

Criminal prosecution by the United States against Walter S. Dickey and Ralph Ellis. On demurrer to indictment. Demurrer sustained.

C. C. Madison, U. S. Dist. Atty., of Kansas City, Mo.

Maurice H. Winger, James A. Reed, and David M. Proctor, all of Kansas City, Mo., for defendants.

REEVES, District Judge. On demurrers to the indictment. The indictment, in substance, in its several counts, charges the defendants with having made publication in the Kansas City Post of the names and the amount of income tax paid by certain parties. The publication of each separate name, with the amount paid as an income tax, is set forth in the indictment in separate counts.

It is alleged in the indictment that the names of the parties paying such income tax and the amounts so paid had become under the law, a matter of public record, and that at the date of publication, to wit, October 24, 1924, "a list of income tax payers within the said collection district, containing the name of Frank C. Niles, showing the amount of said income tax, determined as aforesaid, and paid by him to the said collector of internal revenue, was prepared, and made available to inspection in the said office of the said collector of internal revenue at Kansas City, state of Missouri, aforesaid, for all lawful purposes and in the manner determined by the said Commissioner of Internal Revenue." The indictment then sets out the specific offense charged, by alleging that the list prepared and made available for inspection was "not for the purpose of being printed in newspapers or public prints." In substance, the above charge, changed only as to names, is repeated in the other counts of the indictment.

The several demurrers challenge the sufficiency of the indictment for the reason, as

stated by the defendants, that the statute upon which it is based, or upon which its sufficiency depends, is a congressional act attempting to regulate purely local matters, and is beyond the scope of granted congressional powers, and impinges upon the First Amendment to the Constitution of the United States, which forbids the enactment of laws abridging the freedom of the press. Moreover, it is urged that the publication of such lists is inferentially authorized by the congressional act. In view of these contentions, it becomes necessary to examine the Revenue Act of 1924 (43 Stat. 253) and to consider the law with respect to the privileges of the press. The pertinent portions of the congressional act provide that:

"The Commissioner shall as soon as practicable in each year cause to be prepared and made available to public inspection in such manner as he may determine, in the office of the collector in each internal revenue district and in such other places as he may determine, lists containing the name and the post office address of each person making an income tax return in such district, together with the amount of the income tax paid by such person." Section 257 (b).

It is both alleged in the indictment and admitted by counsel that the publication was made from this list and contained the data required by the above provision. The indictment, however, is based upon section 1018 of the Revenue Act, approved June 2, 1924, and particularly a subdivision of said section which was in the law previously, and appeared as section 3167 of the Revised Statutes (Comp. St. § 5887). This section says, among other things, that "it shall be unlawful for any person to print or publish in any manner whatever not provided by law any income return, or any part thereof or source of income, profits, losses, or expenditures appearing in any income return." The First Amendment to the Constitution of the United States provides that "Congress shall make no law abridging the freedom of speech or of the press." The above, with other pertinent matters, will be discussed in the course of the opinion.

[1] 1. Concededly, the Congress has no power, save such power as may have been specifically granted to it by the Constitution. The provisions of the Constitution clothe Congress with power, among other things, to impose and collect taxes, and in view of one of the amendments to the Con-

stitution the Congress is given power to enact all necessary legislation to make effective the income tax amendment. It is academic that, when clothed with a main or principal power, the Congress possesses such incidental powers as to enable it to make effective its exercise of the chief power, so that all legislation incidental or germane to the principal power may be enacted, and such legislation may to a degree embody regulatory provisions. In making effectual the Income Tax Law, the Congress would undoubtedly have the power to preserve the secrecy of its taxing operations and to protect taxpayers against harm that might accrue from governmental processes.

From the argument and briefs submitted, the foregoing proposition is not challenged. It is equally fundamental, however, that under the guise of a taxing power the Congress cannot regulate any matters of a purely local nature, and enforce a tax as a penalty for disobedience to such regulation.

In the instant case the publications gave the names of taxpayers and the amounts paid by them. This information had already been yielded to the public, as a list of the taxpayers, with the amounts paid, had been made available for public inspection. The power of Congress to enforce the payment of the tax had been made effective and had been concluded, and with the final exercise of the chief power granted to Congress the incidental powers would of necessity be at an end. Congress would have no authority to continue to exercise an incidental power which in a measure involves local regulation, after it had fully enjoyed and exhausted its main power and had gathered all the benefits accruing therefrom.

But it may be argued that such publication is prejudicial to the taxpayer. This may be true, and if the Congress had attempted to suppress all publications, its act probably could have been made effective; but in this case the Congress attempted to regulate the manner of the publication of the lists. This was clearly a usurpation of power. It was not an incident to its power to tax, but obviously an attempt on the part of the Congress to say in what manner the people should acquire information made available to them.

Moreover, if the enactment is susceptible of the construction given it by counsel for the government, the act would be a clear transgression upon the First Amendment to the Constitution which forbids an abridgment of the freedom of the press. In this

view, the court is constrained to hold that the enactment is violative of the First Amendment to the Constitution and is void in law.

[2] 2. In the above discussion, the theory has been followed to the effect that the publication as made offended against the congressional act. I am not inclined to that theory. The statute, upon which the indictment is based, makes it "unlawful for any person to print or publish in any manner whatever not provided by law any income return or any part thereof, or source of income, profits, losses, or expenditures appearing in any income return."

The publication in question did not violate this provision, as no publication was made "in any manner whatever" of "any income return or any part thereof," and did not purport to cover any income return, but, as conceded on argument by the government, the indictment only charged that the publication as made was from a list of those who had paid a tax and the amount paid by them respectively. This was separate and apart from the return, and may have been different from the return, or it may have checked against a single item, not including the name of the taxpayer in the return.

Paragraph B of section 257 of the congressional act, as hereinbefore set out, enjoins upon the Commissioner the duty to have prepared and made available to public inspection "lists containing the name and post office address of each person making an income tax return, together with the amount of the tax paid by such person." Undoubtedly it was the congressional purpose to preserve the cloak of secrecy upon the returns of income tax payers, but after the imposition and the payment of the tax, then the fact of the payment, with the name of the taxpayer and the amount paid by him, must be made available for public inspection. It could only be a violation of the law if it could be construed as printing and publishing by indirection a part of the return. In all probability the Congress had this in mind when it provided that the name and amount paid by a taxpayer should be made available for public inspection. Moreover, the inhibition of the section is directed against the publication "in any manner whatever" of any portion of the return "not provided by law." If, therefore, the amount paid as a tax may be construed as part of the return, it was excepted from the provisions of the penal statute, for its publication is in a measure

provided for by law, in this: That it must be made available for public inspection.

Section 3167, Revised Statutes, re-enacted as a part of the Revenue Law of 1924, forbids any officer of the government from divulging or making known in any manner whatever the amount or source of income, or any particulars thereof, set forth or discussed in any income return. Yet such officer by another section of the statutes is required to expose to public inspection a list of all income tax payers, with the amount paid by each. It would be strange indeed if an interpretation more favorable to an officer should be made than to the unofficial person mentioned in practically the same language in the same statute.

It is my judgment that the name of the taxpayer and amount paid by him was not considered by the lawmakers such an important part of the return as to cover it with the cloak of secrecy. Even if the Congress sought to maintain a measure of secrecy upon this information, it not only exceeded its authority, but inpinged upon the First Amendment to the Constitution.

In view of the foregoing, the demurrers of the several defendants will be sustained.