## UNITED .STATES *v.* DICKEY ET AL.

ERROR TO THE DISTRICT COURT. OF THE UNITED STATES FOR
THE WESTERN DISTRICT OF MISSOURI.

No. 768.　Argued April 16, 17, 1925.—Decided May 25, 1925.

1. Assuming that no constitutional right of the tax-payer is invaded, the question whether income-tax returns shall be published or kept secret is addressed to .the discretion of Congress. P. 386.
2. Section 257 (b) of the Revenue Act of June 2, 1924, directs the Commissioner of Internal Revenue to prepare, each year, and make "available to public inspection in such manner as he may determine, in the office of the collector of each internal revenue district and in such other places as he may determine, lists containing the name and post-office address of each person making an income-tax return in such district, together with the amount of the income-tax paid by such person.": The same act (§ 1018) reenacts § 3167 Rev. Stats., which makes it a misdemeanor to print or publish in any manner whatever "not provided by law" any income' return or any part thereof, etc. *Held,* in view of the legislative history of these provisions and the evident policy of the Act to secure publicity of the information authorized to be put into the lists, that publication by newspapers of the names and amounts of taxes so listed is not within the inhibition of § 3167. P. 385.

3 Fed. (2d) 190, affirmed.

ERROR to a judgment of the District Court sustaining a demurrer to an indictment accusing the editor and the managing editor of divers newspapers of printing and publishing parts of federal income-tax returns, in violation of § 1018 of the Revenue Act of June 2, 1924, reënacting Rev. Stats. § 3167.

*The Solicitor General* for the United States.

Section 3167, Rev. Stats. reënacted as § 1018 of this Revenue Act, has been a provision of the Income Tax Law since the first act adopted under the Sixteenth Amendment. It was not changed in the Revenue Act of 1924 nor was there any attempt from the introduction to the adoption of the act to change this provision.

The complete return required by the law and regulations is the " return," the printing or publishing of the whole or any part of which is prohibited by § 3167. The name of the taxpayer and the amount of his tax certainly are parts of this return. It can not be doubted that, at least prior to the enactment in 1924, publication of the name of an income taxpayer and the amount of his tax was under the law a crime. Was the law changed in this regard by subdivision (b)? As between §§ 257 and 1018 the latter is the last expression of the legislative will and as such prevails if between them exists, as we think there does not, an irreconcilable conflict. *Merchants National Bank of New Haven* v. *United States,* 214 Fed. 200. If the familiar rules of construction be applied and the two sections read together, their effect is to authorize the Commissioner of Internal Revenue to make available to public inspection, in the offices of Collectors of Internal Revenue, or such other places as he may determine, lists showing the names of taxpayers and the amounts of income tax, respectively, paid by them, but not to authorize the publication of such lists, for the reason that they comprise data derived from and constituting part of income-tax returns, the printing or publishing of which, unless authorized by law, is specifically prohibited.

The phrase " available to public inspection " does not import a right " to print or publish." *Pabst Brewing Company* v. *Crenshaw,* 198 U. S. 17. " Public " is defined as meaning " open to the knowledge or view of all; general; common; notorious . . . open to com-

mon or general use." So "available to public inspec-
tion" merely means open to all to examine and view.
But "to print or publish" means something entirely
different. "Publish" is defined, when used in con-
nection with newspapers, as meaning "to bring before
the public as for sale or distribution"; especially to
print, or cause to be printed, and to issue from the
press, either for sale or general distribution. The use
of the word "print" in connection with "publish" in
§ 3167, Rev. Stats., is significant. It gives emphasis to
the fact that the word "publish" as there employed is
used in the sense of distribution by the press. The
distinction between "inspection" and "print or pub-
lish" is shown in § 257 itself, in subdivision (a) thereof.
So also a distinction is made by Congress in the section
immediately following § 257. This gives the only au-
thorization to "publish" income-tax data to be found
in the Revenue Act of 1924. That by "inspection" as
used in §§ 257 (a) and 257 (b) is meant only the right to
examine or view and nothing more, is further shown by
the fact that in the first proviso in 257 (a), giving certain
congressional committees the right to "inspect" returns
Congress deemed it necessary to affirmatively provide that
the information so obtained "may be submitted by the
committee obtaining it to the Senate or the House, or to
both the Senate and House, as the case may be." The
necessary inference is that, in the absence of this specific
authority, the right to inspect would not carry with it
the right to communicate the information so obtained even
to the Congress itself.

If Congress had intended to open the doors to unlim-
ited inspection, it would not have been so careful to
make the right of inspection subject to the discretionary
powers of the Commissioner of Internal Revenue. For
this there were obvious reasons. The inspection may be
asked for a legitimate purpose, or it may be asked from

idle curiosity, or even from an attempt to injure the credit of another. Many States have statutes which require the lists of stockholders to be available to the stockholders, but it has been held that such a right can not be exercised for an improper purpose. Similarly, in respect to the present law, Congress obviously intended that the Commissioner should allow a reasonable inspection—that is—for legitimate purposes.

That § 3167, Rev. Stats., was designed to meet just such contingencies is clearly shown when that section is viewed as a whole. It is in two distinct parts. The first part relates to the divulging of information contained in returns by employees who, of course, have free access thereto, and the second part to the printing or publishing of any part of a return by any other person. Manifestly, by two such distinct provisions, it was intended to protect not only the source of information but also to guard it in any channel in which it might subsequently flow. As to the contention that this construction leads to an absurd result, in that it punishes one for publishing in printed form what he is at liberty to communicate orally, it is sufficient to say that such is quite frequently the case with regard to many laws. For instance, one may communicate by word of mouth information concerning lotteries which he may not print and send through the mails. Again, one may orally recite any portion of a copyrighted book which it would be unlawful for him to print or publish. Such examples could be multiplied indefinitely.

In construing these sections the fact that they are penal has not been lost sight of, but effect is to be given to the plain meaning of the language of penal statutes in the same manner as in the case of other statutes. *Bolles* v. *Outing Company,* 175 U. S. 262; *Wilson* v. *Wentworth,* 25 N. H. 245, 247.

As to whether a person has, in the absence of express statutory authority, the right to inspect and take memo-

randa from public records for the purpose of publication,
See 34 Cyc. 594; *Buck* v. *Collins,* 51 Ga. 391; *In re License
Docket,* 4 Pa. Dist. 162; 23 R. C. L. 160; *In re Caswell,* 18
R. I. 835, and Note 27 L. R. A. 82; *Belt* v. *Abstract Co.,*
73 Md. 289.

The provisions of Rev. Stats. § 3167 are within the pow-
ers conferred upon Congress by the Constitution. They
do not constitute an invasion of the rights secured by the
First Amendment.

*Mr. M. H. Winger* and *Mr. James A. Reed,* with whom
*Mr. David M. Proctor* was on the brief, for defendants in
error.

From 1798 to 1870 the law not only permitted, but
required full publicity of tax returns. In the laws of 1870
to 1894 such limitations as were put upon publication of
returns applied only to tax assessors and their deputies.
In 1894 the law for the first time attempted to prevent
newspapers from publishing the returns; but even
this law permitted publication when "provided by law."
The law of 1894 having, so far as its income tax provisions
were concerned, been almost immediately declared to be
unconstitutional, the provision relating to publicity of
returns remained practically a dead letter until the Con-
stitution was amended, and the law of 1913 enacted.

The law of 1913 greatly enlarged the right of publicity.
It declared the returns to be public records; it made them
open to inspection by all persons on order of the Presi-
dent; it gave the state officers the right to inspect the
returns without the permission of the President, and it
placed no limitation upon publicity of facts ascertained
by the state authorities.

The law of 1918 further enlarged the right of publicity
in two important particulars. It authorized stockholders
to examine corporate returns, but imposed heavy penal-
ties for publishing the facts thus learned; it introduced

an entirely new subject which did not relate to publicity of returns, but to the preparation by the Commissioner of lists containing the names and addresses of taxpayers, and the publication of such lists in the office of the Collector of Internal Revenue in each district, and in such other places as the Commissioner may determine.

In 1924 an effort was made in the House of Representatives to grant full publicity for all returns. This contention was compromised in the House by providing that the committees of Congress could have access to the returns and the decisions made thereon, and could report the facts to Congress, without limitation upon publicity of facts gathered by the committees of Congress, or the proceedings of Congress relative thereto. When the bill reached the Senate it was amended so as to provide full' publicity of returns. In conference, the disputes between those who wanted secrecy and those who wanted absolute publicity was compromised by adding to the provision for the publication of lists of names and addresses of taxpayers, a provision that the amount of taxes paid should also be stated in the lists.

The clear intention of Congress was to preserve secrecy as to the private information contained in the returns, but to give full publicity in the published lists to the names and addresses of the taxpayers and the amounts ultimately paid.

The Federal Government cannot prepare a list of taxpayers, declare that list to be a public record, publish its contents to every person who cares to read and make it available to every person who cares to look at it, and then send a man to jail for talking or writing about that which the Government has already made public; and the imposition of any such penalty is in violation of the First and Tenth Amendments to the Constitution of the United States. If publication in a newspaper of any part of the

lists be a crime, then publication by word of mouth is equally a crime.

It is claimed that the publication of the lists interferes with the government in the collection of its taxes. The answer is that the tax has already been collected before the lists are made.

On the question of the right of free speech and liberty of the press, the only limitations which have ever been placed on these rights by the courts are included under one of four heads, blasphemy, immorality, sedition and defamation or libel, which are discussed at length in *State* v. *Shepherd*, 177 Mo. 205.

MR. JUSTICE SUTHERLAND delivered the opinion of the Court.

An indictment was returned in the court below charging defendants in error as owner-editor and managing editor of several newspapers published at Kansas City, Missouri, with printing and publishing therein parts of certain designated federal income-tax returns, showing the names of the tax payers and the amounts of their income taxes. Demurrers were interposed to the indictment upon the ground that the facts set forth were not sufficient in law to charge any crime against the defendants, because the information so published was open to public inspection, constituted a public record available to the general public, and, consequently, was proper matter for news publication; and that if any statute attempted to forbid or penalize such publication, it contravened the First Amendment to the federal Constitution which prohibits Congress from making any law abridging the freedom of speech or of the press. The court below sustained the demurrers and dismissed the indictment. 3 Fed. (2d) 190.

The indictment is drawn under that part of § 1018 of the Revenue Act of June 2, 1924, c. 234, 43 Stat. 253, 344–346, which reënacts R. S. § 3167, copied in the

margin.[1]  Section 257(b) of the same act, 43 Stat. 293, provides: " The Commissioner shall as soon as practicable in each year cause to be prepared and made available to public inspection in such manner as he may determine, in the office of the collector in each internal-revenue district and in such other places as he may determine, lists containing the name and the post-office address of each person making an income-tax return in such district, together with the amount of the income tax paid by such person."

The prohibition against publication contained in § 3167, it will be seen, is not absolute, but subject to possible qualification by other provisions of law.  The language is that it shall be unlawful to print or publish in any manner " not provided by law " any income return or any part thereof, etc.  On behalf of defendants in error, it is contended that § 257(b) effects such a qualification.  To this the Government replies that the extent to which that provision goes is to authorize the Commissioner of Inter-

---

[1] " Sec. 3167. It shall be unlawful for any collector, deputy collector, agent, clerk, or other officer or employee of the United States to divulge or to make known in any manner whatever not provided by law to any person the operations, style of work, or apparatus of any manufacturer or producer visited by him in the discharge of his official duties, or the amount or source of income, profits, losses, expenditures, or any particular thereof, set forth or disclosed in any income return, or to permit any income return or copy thereof or any book containing any abstract or particulars thereof to be seen or examined by any person except as provided by law; and it shall be unlawful for any person to print or publish in any manner whatever not provided by law any income return, or any part thereof or source of income, profits, losses, or expenditures appearing in any income return; and any offense against the foregoing provision shall be a misdemeanor and be punished by a fine not exceeding $1,000 or by imprisonment not exceeding one year, or both, at the discretion of the court; and if the offender be an officer or employee of the United States he shall be dismissed from office or discharged from employment."

nal Revenue to make available for public *inspection* lists showing names of tax payers and amounts of taxes paid by them; and that this falls short of authorizing the *printing* and *publishing* of the information contained in the lists.

Something is said in the briefs, and was said at the bar, as to the wisdom, on the one hand, of secrecy, and, on the other hand, of publicity, in respect of tax returns. But that is a matter addressed to the discretion of the law-making department, with which the courts are not concerned, so long as no constitutional right or privilege of the tax payer is invaded; and there is no contention that there is any such invasion here, whichever view may be adopted. The problem, therefore, is, primarily, one of statutory construction, the disposition of which will determine whether the constitutional question as to the freedom of the press needs to be considered. For the purposes of the inquiry, we assume the power of Congress to forbid or to allow such publication, as in the judgment of that body the public interest may require.

The Commissioner is directed to make the lists of tax payers and amounts paid available for public inspection in the office of the collector and elsewhere as he may determine. His discretion in that respect is limited only by his own sense of what is wise and expedient. And the inquiry at once suggests itself: To what end is this discretion, so vested in him, to be exercised? The obvious answer is: To the end that the names and addresses of the tax payers and the amounts paid by them may be generally known. To the extent of the information authorized to be put into the lists, this is the manifest policy of the statute, with which the application of § 3167 to the present case, it fairly may be argued, will be out of harmony. Whatever one's opinion may be in respect of its wisdom, the policy having been adopted as an aid to the enforcement of the revenue laws or to the accomplishment

of some other object deemed important, it is not easy to conclude that Congress nevertheless intended to exclude and severely to penalize the effective form of secondary publicity now under consideration. Information, which everybody is at liberty to acquire and the acquisition of which Congress seemed especially desirous of facilitating, in the absence of some clear and positive provision to the contrary, cannot be regarded otherwise than as public property, to be passed on to others as freely as the possessors of it may choose. The contrary view requires a very dry and literal reading of the statute quite inconsistent with its legislative history and the known and declared objects of its framers.

Prior to the adoption of the Sixteenth Amendment, the policy in respect of tax publicity, as evidenced by congressional legislation, had not been uniform. Generally, the earlier acts had been liberal and the later ones restrictive in character. Section 3167 R. S. first appeared in substantially its present form, in the Act of August 27, 1894, § 34, c. 349, 28 Stat. 509, 557. It was reënacted by the Revenue Acts of 1913, 1916, 1919 and 1921, and by the existing Act of 1924. The Act of 1913, c. 16, 38 Stat. 177, provided that tax returns should be open to inspection only upon order of the President; but allowed state officers under certain conditions to have access to the returns showing the names and income of corporations, etc. The Act of 1919, § 257, c. 18, 40 Stat. 1086, in addition to this, allowed stockholders of any corporation to examine its returns upon conditions therein stated. That act further provided (p. 1087) that the Commissioner should cause to be prepared and made available to public inspection, etc., " lists containing the names and the post-office addresses of all individuals making income-tax returns in such district "; and this was expanded by the present law, § 257(b), Act of 1924, to include the amount of the income tax paid.

It is significant that, while these progressively liberal publicity amendments were being made, § 3167—to the general rule of which they were in terms opposed—was carried along by reënactment without change, plainly indicating that, in the opinion of Congress, by the application of the qualifying clause " not provided by law," the scope of the general rule against publication would become automatically narrowed to the extent of the liberalizing exceptions. The congressional proceedings and debates and the reports of the conferees on the disagreeing votes of the two Houses, which we have examined but think it unnecessary to review, strongly confirm our conclusion that Congress, understanding that this limitation would apply, intended to open the information contained in the lists to full publicity.

As a result, we hold that, to the extent provided by § 257(b), Congress meant to abandon the policy of secrecy altogether and to exclude from the operation of § 3167 all forms of publicity, including that here in question.

                                        *Judgment affirmed.*

MR. JUSTICE STONE took no part in the consideration or decision of this case.