## SULLIVAN v. UNITED STATES.

(Circuit Court of Appeals, Fourth Circuit. October 19, 1926.)

No. 2507.

**1. Internal revenue ⬬⟹7(15).**

Congress has power, and by the Revenue Act 1921 manifests intention, to tax incomes derived from criminal transactions, as by unlawful sale of intoxicating liquor.

**2. Internal revenue ⬬⟹7(15).**

Income from crime is taxable.

**3. Witnesses ⬬⟹293—Requirement of revenue law that one whose income is derived from violation of law must make return held in violation of Constitution, and conviction for failure to make return cannot be sustained (Revenue Act 1921, §§ 223, 253 [Comp. St. §§ 6336⅛kk, 6336⅛v]; Const. Amend. 5; National Prohibition Act [Comp. St. § 10138¼ et seq.]).**

Revenue Act 1921, § 223 (Comp. St. § 6336⅛kk), in so far as it requires return from one whose income is derived from violation of law is in conflict with Const. Amend. 5, precluding prosecution under Revenue Act 1921, § 253 (Comp. St. § 6336⅛v), for failure to make return on income from sale of liquor in violation of National Prohibition Act (Comp. St. § 10138¼ et seq.).

**4. Witnesses ⬬⟹297.**

One who files income tax return under oath is "witness," within meaning of Const. Amend. 5, which amounts to self-incrimination, if disclosing commission of crime.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Witness.]

In Error to the District Court of the United States for the Eastern District of South Carolina, at Charleston; Ernest F. Cochran, Judge.

Manly S. Sullivan was convicted for refusal to make returns to the Collector of Internal Revenue, and he brings error. Reversed.

Frederick W. Aley, of Charleston, S. C., for plaintiff in error.

J. D. E. Meyer, U. S. Atty., of Charleston, S. C. (Louis M. Shimel, Asst. U. S. Atty., of Charleston, S. C., on the brief), for the United States.

Before ROSE and PARKER, Circuit Judges, and SOPER, District Judge.

SOPER, District Judge. The plaintiff in error, who was defendant below, was convicted in the District Court of the Eastern District of South Carolina under the third count of an indictment which charged a violation of section 253 of the Revenue Act of 1921 (42 Stat. 227, 268 [Comp. St. § 6336⅛v]), in that during the year 1921 he had a net income in the total sum of $10,000, from an automobile agency and from the business of selling beverages, and that he willfully refused on March 15, 1922, to make a return to the Collector of Internal Revenue for the Internal Revenue Collection District of South Carolina, stating specifically the items of his gross income and the deductions and credits allowed under the act. There is but one assignment of error, which grows out of the refusal of the District Judge to direct a verdict of acquittal.

Section 253 provides that any person who willfully refuses to make such return shall be guilty of a misdemeanor, and fined not more than $10,000, or imprisoned for not more than one year, or both. Section 223 (42 Stat. 250 [Comp. St. § 6336⅛kk]), provides that certain individuals, such as the defendant, shall make, under oath, a return stating specifically the items of their gross incomes and the deductions and credits allowed under the law. No return was made by the defendant, although the evidence shows clearly enough

that during the year 1921, he was in receipt of a net income of at least $10,000 from the sale of intoxicating liquors in violation of the National Prohibition Act (Comp. St. § 10138¼ et seq.). But the defendant contends (1) that unlawful gains are not within the meaning of the Revenue Act of 1921 (42 Stat. 227); and (2) that in any event, he was relieved from the duty of making a return by the provision of the Fifth Amendment to the Constitution that no person shall be compelled in any criminal case to be a witness against himself.

[1] It is admitted that Congress has power to tax incomes derived from the unlawful sale of intoxicating liquor (United States v. Yuginovich, 256 U. S. 450, 462, 41 S. Ct. 551, 65 L. Ed. 1043; United States v. Stafoff, 260 U. S. 477, 480, 43 S. Ct. 197, 67 L. Ed. 358), and that such income comes literally within the words employed in section 213 of the act (42 Stat. 237 [Comp. St. § 6336⅛ff]), which provides that "the term 'gross income' (a) includes gains, profits, and income derived from salaries, wages, or compensation for personal service, * * * of whatever kind and in whatever form paid, or from professions, vocations, trades, businesses, commerce, or sales, or dealings in property, whether real or personal, growing out of the ownership or use of or interest in such property; also from interest, rent, dividends, securities, or the transaction of any business, carried on for gain or profit, or gains or profits and income derived from any source whatever."

But the argument is that Congress could not have intended to include within these terms the gains from crime, and thus put legitimate and illegitimate transactions on the same footing. It is pointed out that strong reasons of public policy require that the gains of commercial dealings, which are also criminal, should be regarded as beneath the contempt of the law for purposes of taxation. The inconsistency of the government in prohibiting an act, and at the same time subjecting it to taxation for purposes of revenue is obvious. The difficulty, if not the impropriety, of applying certain administrative sections of the Revenue Act to an illegal business is also manifest. The taxpayer is not only to make a return, stating the items of his income under section 223 as pointed out above, but is required by section 1300 (42 Stat. 308 [Comp. St. § 6371⅘b]) to keep such records and render under oath such statements and returns, and to comply with such regulations as the Commissioner of Internal Revenue, with the approval of the Secretary, may from time to time prescribe. The criminal would be compelled to keep a business record of his crime.

Section 214 of the act (42 Stat. 239 [Comp. St. § 6336⅛g]), provides for the deductions allowable in computing the net income of the taxpayer, and specifies that they shall include all the ordinary and necessary expenses paid or incurred in carrying on the business; and thus the law would seem to impose upon the government, in order to ascertain the net income of an illicit trade, the duty to examine, if not to allow, such expenses as the bribery of officials and others equally obnoxious. Furthermore, section 1311 (42 Stat. 311 [Comp. St. § 5887]), re-enacts, amongst others, section 3167 of the Revised Statutes, which makes it unlawful (with certain exceptions discussed below), for any collector or officer or employee of the United States to divulge or make known to any person, the amount or source of income set forth or disclosed in any income return, or to permit any return or copy thereof to be seen or examined by any person, and any offense against this provision is a misdemeanor, punishable by fine or imprisonment; and it is suggested that Congress could not have intended to impose upon the agents and employees of the United States, under any circumstances, the obligation to keep secret information of the commission of crime which should come to them in their official capacity.

These considerations, it must be confessed, are persuasive in their force, and it is not surprising that they have led to divergent opinions in the courts which have passed upon the question. The Circuit Court of Appeals of the Second Circuit, in the case of Steinberg v. United States, 14 F.(2d) 564, decided June 1, 1926, has held that the profits from the sale of intoxicating liquor, in violation of the National Prohibition Act, are income within the meaning of the Revenue Act of 1921; but there was a vigorous dissent. Again the Supreme Court of Canada, in the case of the Canadian Minister of Finance v. Smith, 2 D. L. Rep. (1925) 1137, in which precisely the same question was raised, decided that profits from illicit traffic in liquor, forbidden by the laws of the Province of Ontario, were not taxable under the Canadian Income War Tax Act of 1917; but this decision was recently reversed, in the summer of 1926, by a judgment of the Judicial Committee of the Privy Council which declared that it was not only within the power of the Dominion Parliament, but within its intention, to apply the provisions of the law to the profits in question. The weight of authority

is therefore against the first contention of the defendant in the case at bar. Moreover, it cannot be said that the dictates of morality or of propriety are all one way. It does not satisfy one's sense of justice to tax persons in legitimate enterprises, and allow those who thrive by violation of the law to escape. It does not seem likely that Congress intended to allow an individual to set up his own wrong in order to avoid taxation, and thereby increase the burdens of others lawfully employed. The problem which Congress had to consider was not so simple as that presented by the case of one whose entire income is earned in a business which offends against a national law of uniform application. Activities lawful in one state of the Union may be unlawful in another. The operations of individual men in the prosecution of their business enterprises are sometimes within and sometimes without the pale of the law. Great aggregations of capital, which have a place in the popular mind, far above the sordid level of the illicit distiller, and the common criminal, sometimes find it profitable to ignore the laws of the state or of the nation. The complexities of the situation are without number. Can it be said that in all such cases Congress intended to tax the law-abiding, and let the criminal go free?

The history of national income tax legislation throws some light on the question. The first income tax law, after the adoption of the Sixteenth Amendment to the federal Constitution, was the Revenue Act of October 3, 1913 (38 Stat. 166). Section B (page 167), provided, amongst other things, that the net income of a taxable person should include income from "the transaction of any lawful business carried on for gain or profit, or gains or profits and income derived from any source whatever." The language is somewhat confusing, but it is significant that the word "lawful" has been omitted from the corresponding sections of subsequent revenue acts, including section 213 of the Revenue Act of 1921.

[2] Furthermore the recent congressional legislation in regard to intoxicating liquors, outlined in the cases of United States v. Yuginovich, and United States v. Stafoff, supra, shows that Congress has deliberately taxed what it has also prohibited. In the first case, the Supreme Court decided that section 35, title 2, of the National Prohibition Law (Comp. St. § 10138½v), as respects persons manufacturing spirits for beverage purposes, superseded section 3257 of the Revised Statutes (Comp. St. § 5993), which makes it an offense for a distiller to defraud the United States of a tax on spirits distilled by him, whereupon, as shown by the latter case, Congress passed the Supplementary Act of November 23, 1921 (42 Stat. 223), by which section 3257 and other revenue laws applicable to intoxicating liquors were revived. The Supplementary Prohibition Act and the Revenue Act of 1921 were passed by the same Congress and approved by the President on the same day. Consequently we think that the income from crime is taxable, and find ourselves in accord with the majority opinion in Steinberg v. United States, supra, where it is said:

"That a given sinner or criminal must, in the pursuit of his or her prohibited vocation, break many laws to obtain the wherewithal to satisfy the taxing. law, must be regarded as immaterial, for the whole matter is covered by one remark of Holmes, J., in United States v. Stafoff, 260 U. S. 477, 43 S. Ct. 197, 67 L. Ed. 358: 'Of course Congress may tax what it also forbids.' This is compendious enough, and was said about liquor; and equally is it of course that, if the Legislature can tax the liquor which it forbids, it can also tax the gains made by dealing in that which is forbidden. We are not concerned with how these singular results are to be obtained; for it is further of course that he who makes unlawful gains cannot lawfully be required to divulge how he made them. This difficulty is so obvious that it must have been considered, even by the lawmakers."

[3] Nevertheless, we are of the opinion that the judgment of the lower court must be reversed on the ground that section 223, so far as it requires a return from one whose income is derived from a violation of the criminal law is in conflict with the Fifth Amendment. It has been seen that section 223 requires a return under oath showing specifically the items of income. Section 1303 (42 Stat. 309 [Comp. St. § 6371⅘cc]), authorizes the Commissioner of Internal Revenue, with the approval of the Secretary, to make all needful rules and regulations for the enforcement of the act, and articles 401 and 402 of Regulation 62 (1922 Edition), require that the return of a person with a gross income for the year of $5,000 shall be on Form 1040, which directs the taxpayer to give the total receipts from his business or profession, and to state the kind of business. Obviously, therefore, the act requires one who has violated the National Prohibition Law to file a return under oath, giving the details of his illegal transactions; and thereby, in our opinion, compels him to be a witness against

himself in a criminal case, within the meaning of the amendment.

This language has received a liberal construction by the courts, so that it may be said to be substantially equivalent to the ancient principle of the law of evidence that a witness shall not be compelled in any proceeding to make disclosures, or to give evidence which will tend to incriminate him or subject him to fines, penalties or forfeitures. Counselman v. Hitchcock, 142 U. S. 547, 563, 12 S. Ct. 195, 35 L. Ed. 1110; Brown v. Walker, 161 U. S. 596, 16 S. Ct. 644, 40 L. Ed. 819. "The privilege," says the Supreme Court in McCarthy v. Arndstein, 266 U. S. 40, 45 S. Ct. 17, 69 L. Ed. 158, "is not ordinarily dependent upon the nature of the proceeding in which the testimony is sought or is to be used. It applies alike to civil and criminal proceedings, wherever the answer might tend to subject to criminal responsibility him who gives it. The privilege protects a mere witness as fully as it does one who is also the party defendant." So it was held that a bankrupt testifying as a witness under section 21a of the Bankruptcy Act (Comp. St. § 9605) was entitled to decline to answer certain questions concerning his assets and liabilities on the ground that to do so might incriminate him. Arndstein v. McCarthy, 254 U. S. 71, 41 S. Ct. 26, 65 L. Ed. 138.

[4] There can be no question that one who files a return under oath is a witness within the meaning of the Amendment. The Supreme Court has held in Boyd v. United States, 116 U. S. 616, 6 S. Ct. 524, 29 L. Ed. 746, that a defendant or claimant in a proceeding by the United States to establish a forfeiture of goods for fraud upon the customs revenues, cannot be required by a court of the United States to produce his private papers and invoices for use in evidence against him. For the rule as to the books of corporations, see Wilson v. United States, 221 U. S. 361, 31 S. Ct. 538, 55 L. Ed. 771, Ann. Cas. 1912D, 558. It is far more clear that the written statements under oath in the return of the taxpayer in answer to questions propounded on forms issued by the Commissioner of Internal Revenue, are the testimony of a witness and amount to self-incrimination if they disclose the commission of a crime.

A somewhat similar situation was considered in the case of United States v. Lombardo (D. C.) 228 F. 980. The Act of June 25, 1910 (36 Stat. 826 [Comp. St. § 8817]), was passed to prevent the transportation in foreign commerce of alien women for immoral purposes. It authorized the Commissioner General of Immigration to exercise supervision over them, and required, upon pain of fine or imprisonment, that every person harboring such a woman within three years after she had entered the United States, should file with the Commissioner General, a statement in writing, setting forth the name of the woman and other facts. The defendant Lombardo was charged with violation of the act and the defense was that the act required her to incriminate herself under the criminal laws of the state of Washington, and thereby deprived her of the protection of the Fourth and Fifth Amendments. The District Court held that the defense was well founded.

The income tax law of the territory of Hawaii was before the Circuit Court of Appeals for the Ninth Circuit in the case of Peacock v. Pratt, 121 F. 772, 58 C. C. A. 48. The law required all persons of lawful age, having an income of $600 or more for the preceding year, from all sources, to render a return in July of each year of the amount of their incomes. An injunction to enjoin the enforcement of the law was sought on the ground that it violated the Constitution of the United States for the reason, amongst others, that it compelled taxpayers to furnish evidence against themselves which might result in their criminal prosecution. The court said that, if the act was unconstitutional in the respect referred to, it did not follow that the whole law was thereby invalidated, for a taxpayer might invoke the protection of the amendment whenever he should be called upon to submit to self-incrimination.

Doubtless Congress could have brought such persons as the defendant within the provisions of the act requiring a return, if it had been of the opinion that a full disclosure was of greater importance than the possibility of punishment for crime; for Congress could have conferred the power of unrestricted examination by providing complete immunity. Arndstein v. McCarthy, 254 U. S. 71, 41 S. Ct. 26, 65 L. Ed. 138. But complete immunity was not granted by the Revenue Act of 1921. The nearest approach is found in section 1311 (R. S. § 3167), which provides that it shall be unlawful for any officer or employee of the United States to divulge or to make known in any manner whatever *not provided by law* to any person the operations or the amount or source of income set forth in any income return, or to permit such return to be seen or examined by any person *except as provided by law*. The exceptions are important.

Section 257 of the Act (42 Stat. 270 [Comp. St. § 6336⅛x]), declares that re-

turns upon which the tax has been determined by the Commissioner of Internal Revenue, shall constitute public records; but they shall be open to inspection only upon order of the President, and under rules and regulations prescribed by the Secretary, and approved by the President. Article 1090 of Regulation 62 shows that the President, by an executive order dated January 24, 1922, directed that returns should be subject to inspection in the discretion of the Commissioner, by officers and employees of the Treasury Department, by the Solicitor of Internal Revenue, or by the head or some other officer or employee of an executive department or other government establishment; and it was provided that a person, if permitted to inspect the returns, might make and take a copy thereof or a memorandum of data contained therein. For a history of the publicity of income tax returns, see United States v. Dickey, 268 U. S. 378, 45 S. Ct. 558, 69 L. Ed. 1006, 38 A. L. R. 1370.

The protection of secrecy, conferred by R. S. § 3167, therefore falls far short of that afforded by the Fifth Amendment. An instance of adequate protection is found in section 30 of title 2 of the National Prohibition Act (41 Stat. 317 [Comp. St. § 10138½q]), which provides in substance that no person shall be excused on the ground that it might tend to incriminate him from testifying in any suit or proceeding based upon any alleged violation of the act, "but no natural person shall be prosecuted or subjected to any penalty or forfeiture for or on account of any transaction, matter, or thing as to which, in obedience to a subpœna and under oath, he may so testify." It was decided that this statute satisfies the constitutional guaranty against self-incrimination, and that a witness under it cannot be excused from testifying on a claim of privilege. United States v. 155 Cases of Intoxicating Liquor (C. C. A.) 297 F. 411. A similar decision in regard to the immunity clause in the Interstate Commerce Act of February 11, 1893 (27 Stat. 443 [Comp. St. § 8577]), was rendered in Brown v. Walker, 161 U. S. 593, 16 S. Ct. 644, 40 L. Ed. 819.

On the other hand, it was held in Counselman v. Hitchcock, 142 U. S. 547, 12 S. Ct. 195, 35 L. Ed. 1110, that R. S. § 860, providing that no evidence obtained from a witness by means of a judicial proceeding, shall be used against him in any manner in any court of the United States in any criminal proceeding, did not afford the complete protection to the witness which the amendment was intended to guarantee, because it would not prevent the use of his testimony to search out other testimony to be used against him in a criminal proceeding. Similarly the immunity clause of section 7 of the Bankruptcy Act (Comp. St. § 9591), to the effect that no testimony given by a bankrupt at a meeting of creditors, shall be offered in evidence against him in any criminal proceeding, was held not to afford a protection equivalent to that guaranteed by the Amendment. Arndstein v. McCarthy, 254 U. S. 71, 41 S. Ct. 26, 65 L. Ed. 138. See, also, Heike v. U. S., 227 U. S. 131, 33 S. Ct. 226, 57 L. Ed. 450, Ann. Cas. 1914C, 128. In short, the rule is as stated in Counselman v. Hitchcock, supra, that "no statute which leaves a party or witness subject to prosecution, after he answers the criminating question put to him, can have the effect of supplanting the privilege conferred by the Constitution [of the United States]." Judged by this standard, the Revenue Act of 1921 did not furnish adequate protection against self-incrimination, and the defendant is entitled to invoke the privilege of the amendment in response to the indictment in the case at bar.

Summarizing our conclusions, we hold that: (1) Congress has power, and by the Revenue Act of 1921 manifested an intention to impose an income tax upon the gains of criminal transactions; (2) the Revenue Act of 1921 does not furnish to one who makes incriminating disclosures in his income tax return an immunity from prosecution equivalent to the protection afforded by the Fifth Amendment; (3) the privilege against self-incrimination provided by the Fifth Amendment furnishes a complete defense to an indictment charging a natural person, under section 253 of the Revenue Act of 1921, with failure to file a return of income under section 223, when the return, if filed, would disclose that the income was earned by the defendant in the course of the commission of a crime.

The judgment of the lower court is therefore reversed.