**PROVIDENCE JOURNAL CO. et al. v. McCOY et al.**

**No. C. A. 925.**

United States District Court
D. Rhode Island.

June 12, 1950.

William H. Edwards, Gerald W. Harrington, of Edwards & Angell, all of Providence, R. I., for plaintiffs.

J. Frederick Murphy, City Solicitor of Pawtucket, Pawtucket, R. I., Aram A. Arabian, Associate Counsel, Providence, R. I., for defendants.

HARTIGAN, District Judge.

The plaintiffs bring this action against the defendants under the Constitution and laws of the United States to enforce their right to inspect and make use of certain public records of the City of Pawtucket, in the County of Providence and State of Rhode Island, having to do with tax cancellations or abatements; to enjoin the defendants, or certain of them, from withholding said records from the plaintiffs or from limiting or infringing upon the plaintiffs' right to inspect and make use of said records; to order the defendants, or certain of them, to permit the plaintiffs to inspect and make use of said records; to recover damages sustained by the plaintiffs as the result of the defendants' improper and illegal conduct; and to obtain an appropriate declaratory judgment as to the matters in issue.

The plaintiffs allege that this action, together with the right of the plaintiffs to

bring and maintain the same, arises under Article XIV of the Amendments to the Constitution of the United States, under Article XIV of the Amendments to the Constitution of the United States (as embracing and making effective Article I of the Amendments), under the provisions of R.S. § 1979, Title 8 U.S.C.A. § 43, R.S. § 1980(3), Title 8 U.S.C.A. § 47(3) and R.S. § 1981, Title 8 U.S.C.A. § 48.

The plaintiffs allege that the matter in controversy exceeds, exclusive of interest and costs, the sum of $3,000.

The plaintiffs further allege that jurisdiction is conferred upon this Court by Section 24(1), (12), and (14) of the Judicial Code, as amended, Title 28 U.S.C., 1940 ed. § 41(1), (12), and (14), Title 28 U.S.C.A. §§ 1331 and 1343, effective September 1, 1948.

The complaint further alleges in substance that the defendants, by their course of conduct, refuse to make available to the plaintiffs tax cancellation resolutions and lists; that the defendants discriminated against the plaintiffs by furnishing one of said lists to another newspaper while continuing to refuse it to the plaintiffs; that the defendants designed, framed and secured the passage of an ordinance in order to block the access of the plaintiffs to said tax cancellation resolutions and lists; that the defendants refuse to make the tax cancellation resolutions and lists available to the plaintiffs under color of said ordinance; that the defendants furnished said tax cancellation resolutions and lists to another newspaper while continuing to refuse these records to the plaintiffs, also under color of said ordinance; and that the defendants purposefully and intentionally designed and carried out an illegal conspiracy to prevent the plaintiffs from inspecting and making use of said tax cancellation resolutions and lists and that this course of conduct on the part of the defendants deprived the plaintiffs of their rights under the Constitution and laws of the United States.

The plaintiffs pray that the defendants be enjoined from withholding said tax cancellation resolutions and lists from the plaintiffs; from limiting or infringing the plaintiffs' rights to inspect and make use of said tax cancellation resolutions and lists in that they be ordered to permit the plaintiffs to inspect and make use of said tax cancellation resolutions and lists.

They further pray that pursuant to the provisions of Section 274d of the Judicial Code as amended, Title 28 U.S.C.A. § 400, Tit. 28 U.S.C.A. Chapter 151, §§ 2201 and 2202 effective September 1, 1948, that the Court adjudicate:

(a) The rights of the plaintiffs to have access to and inspect and make use of said tax cancellation resolutions and lists;

(b) The respects in which the defendants have acted and are acting illegally and wrongfully in withholding said tax cancellation resolutions and lists from the plaintiffs;

(c) The respects in which the defendants have violated and are violating the plaintiffs' right under the Constitution and laws of the United States;

(d) The public character of said tax cancellation resolutions and lists;

(e) The unconstitutionality of the ordinance passed on January 21, 1948 and of the resolutions passed February 9, 1948.

The defendants filed a motion to dismiss the complaint on the ground that there is no jurisdiction of this Court over the subject matter and that the complaint fails to state a claim upon which relief can be granted. The defendants further move that the Providence Journal Company and each of the individual defendants be dropped as improper parties; that the complaint does not comply with the provisions of Rule 8, subsections (a) and (e) of the Federal Rules of Civil Procedure, 28 U.S.C.A., and that it fails to join indispensable parties.

The determination of the defendants' motion as amended was deferred until the trial.

The defendants filed their answer in which they allege that the complaint fails to state a claim against the defendants upon which relief can be granted and deny conspiracy or improper withholding of rec-

ords. The defendants traverse the plaintiffs' allegation that the matter in controversy exceeds, exclusive of interest, the sum of $3,000. The defendants' answer also alleges that the tax abatement records of the City of Pawtucket are open to the inspection of all persons thereunto lawfully authorized upon compliance with reasonable requirements of law set forth by the Supreme Court of the State of Rhode Island in 1893, In re Caswell's Request, 18 R.I. 835, 29 A.2d 259, 27 L.R.A. 82, and that the parties to the complaint are improperly joined both as parties plaintiff and as parties defendant.

Tit. 28 U.S.C.A. § 1331 provides: "The district courts shall have original jurisdiction of all civil actions wherein the matter in controversy exceeds the sum or value of $3,000, exclusive of interest and costs, and arises under the Constitution, laws or treaties of the United States."

Tit. 28 U.S.C.A. § 1343 provides:

"The district courts shall have original jurisdiction of any civil action authorized by law to be commenced by any person:

"(1) To recover damages for injury to his person or property, or because of the deprivation of any right or privilege of a citizen of the United States, by any act done in furtherance of any conspiracy mentioned in section 47 of Title 8;

"(2) To recover damages from any person who fails to prevent or to aid in preventing any wrongs mentioned in section 47 of Title 8 which he had knowledge were about to occur and power to prevent;

"(3) To redress the deprivation, under color of any State law, statute, ordinance, regulation, custom or usage, of any right, privilege or immunity secured by the Constitution of the United States or by any Act of Congress providing for equal rights of citizens or of all persons within the jurisdiction of the United States."

The Providence Journal Company (hereinafter referred to as the Journal), is a corporation organized and existing under the laws of the State of Rhode Island, is, and for many years has been, engaged in the business of publishing two daily newspapers (the Providence Journal and the Evening Bulletin) and one weekly newspaper (the Providence Sunday Journal). These newspapers have a wide circulation throughout the State of Rhode Island and a substantial circulation in the City of Pawtucket. The Journal is, and was at the commencement of this action, a taxpayer of the City of Pawtucket and maintains an office in that city.

Sevellon Brown is a citizen of the United States and of the State of Rhode Island. He is, and was at the commencement of this action, the editor and publisher of the Journal and, as such, is the chief executive officer of the newspapers published by said company.

Joseph A. Kelly is a citizen of the United States and of the State of Rhode Island. He is, and was at the commencement of this action, a reporter for, and the manager of, the Pawtucket Bureau of the Journal and a resident and taxpayer of the City of Pawtucket.

The plaintiffs seek, through this proceeding, to enforce their right to inspect public records of the City of Pawtucket having to do with tax cancellations or abatements with a view to publication of information contained therein.

The defendants hereinafter listed were at all pertinent times officials of the City of Pawtucket. Ambrose P. McCoy is the Mayor and, as such, is the chief executive officer of the city. James M. Donovan is the City Clerk and Clerk of the Board of Aldermen; Mary G. McCaughey is Deputy City Clerk and, in the absence of Donovan, is Acting City Clerk and Clerk of the Board of Aldermen. James J. Garvey, Louis A. Murphy and Edward J. Bigoness are Assessors of Taxes (Bigoness' death having been noted on the record, the action against him was dismissed). Vincent J. McAloon is City Treasurer and as such performs the duties and exercises the powers conferred upon the Collector of Taxes. Raymond F. Henderson is a member of the Board of Aldermen. Robert A. Magill is a member of the Common Council and all of the defendants, except Magill, continue to occupy these positions.

The joint resolution of the City Council passed and approved by the Mayor on December 31, 1947, reads as follows:

"Whereas, the Board of Assessors of Taxes of the City of Pawtucket has, in accordance with the provisions of Chapter 209 of the Ordinances of the City of Pawtucket, approved April 20, 1923, filed with the City Auditor a list of abatements of taxes with the reason for said abatement listed thereon;

"Now, Therefore, Be It Resolved, That the City Auditor and the City Treasurer be and they hereby are authorized to credit on their accounts receivable, as abatements of taxes, the sum of $89,377.12, which represents the amount of taxes on Real Estate, Tangible Personal and Intangible Personal Property, as set forth in said list of abatements of taxes submitted by said Board of Assessors of Taxes, which said list is hereto affixed and made a part of this resolution."

Similar tax abatement or cancellation resolutions were passed in the years 1942, 1943, 1945 and February 1947. These resolutions were passed on the following dates and in the following amounts:

| Date | Amount |
|------|--------|
| December 31, 1942 | $ 20,081.42 |
| December 31, 1943 | $111,416.14 |
| December 31, 1945 | $142,172.89 |
| February 12, 1947 | $107,205.44 |

McAloon, the City Treasurer of the City of Pawtucket, has custody of the original tax abatement or cancellation resolution passed by the Board of Aldermen and the Common Council on December 31, 1947, which resolution has attached to it the list of the tax abatements or cancellations containing the names of the persons whose taxes were abated or cancelled and the amounts of such abatements or cancellations.

It is not clear that McAloon has custody of the original tax abatement or cancellation resolutions passed in the years 1942, 1943, 1945 and February 1947, which resolutions have attached to them the list of tax abatements or cancellations containing the names of the persons whose taxes were abated or cancelled and the amounts of such abatements or cancellations or whether said records have been returned to the town in accordance with the provisions of Chap. 1800, Sec. 3, Public Laws of Rhode Island 1946.

The public records of the City of Pawtucket used in the transaction of municipal affairs and the records pertaining to matters of public interest and concern are, in general, open to general inspection by any member of the public (including newspaper reporters) at all reasonable times on business days and during regular business hours.

On December 31, 1947 at about 6:25 p. m., at the conclusion of a regular meeting of the Board of Aldermen held at 5 p. m., Kelly requested permission of Donovan to look at the tax abatement or cancellation resolution which had just been passed by the Board of Aldermen and Common Council. Donovan told Kelly to see him "tomorrow".

On January 2, 1948, Thomas L. Forbes, a reporter for the Journal, attempted to see Donovan in his office at the Pawtucket City Hall but was unable to locate defendant Donovan on that occasion.

On January 5, 1948, Kelly attempted, without success, to see Donovan in his office at the Pawtucket City Hall and on the same day Kelly requested McCoy for the list of tax abatements, to which request McCoy replied that the tax assessors would give out the list "in due time."

On January 5, 1948, Frederick R. Calcutt, a reporter for the Journal, requested permission of Joseph D. Collins, office manager in the Board of Tax Assessors' office, to see the tax abatement list and asked Collins if he had received a registered letter from Councilman Maynard in regard to the list and was informed that he had not and that he had no authority in regard to the abatement lists.

On January 6, 7, and 9, 1948, Calcutt attempted to see Donovan in his office in the Pawtucket City Hall, but was informed by a clerk in Donovan's office that he was busy. Forbes accompanied Calcutt on January 9.

On January 7, 1948, at the conclusion of the regular meeting of the Board of Aldermen, Kelly and Forbes requested permission of Donovan to look at the tax abatement resolution passed on December 31, 1947. Donovan replied that it was locked in the vault. Donovan, when asked whether the tax abatement resolution would be available on the following morning, said "It will be available when I'm available."

On January 12, 1948, Kelly requested permission of Garvey to see the tax abatement list. Garvey refused the request.

Also, on January 12, 1948, Kelly again attempted to see Donovan but was again informed that he was busy.

The Journal, Brown and Kelly, addressed a letter dated January 16, 1948 to McCoy, Donovan, McCaughey, Garvey and Murphy making written demand upon these officials for the tax abatement or cancellation records. This letter requested "that Mr. Kelly or some other designated and authorized representative of the Providence Journal Company be permitted to inspect said tax abatement resolution and the list of tax abatements contained therein during reasonable business hours and to make copies and abstracts thereof, with a view to publication of information contained therein." The letter also requested permission for the plaintiffs to inspect similar tax abatement resolutions and lists for the years 1942, 1943, 1944, 1945 and 1946. Duplicate originals of each of these letters were delivered to the residences of each of the defendants named therein on Saturday, January 17, 1948. Ex. 1. Personal delivery of the letter was made on Murphy and Miss McCaughey.

No reply to any of these letters has been made by any of the defendants to whom they were addressed.

On January 21, 1948, McCoy, during a meeting of the Board of Aldermen, announced the release of the 1947 tax abatement list to the Pawtucket Times, a daily newspaper published in the City of Pawtucket and engaged in competition in that city with the Journal.

On January 21, 1948, the Board of Aldermen at a regular meeting of that body, passed an ordinance (Ex. 2) entitled "An Ordinance Relating to Tax Abatement Records" which ordinance provides as follows:

"It is ordained by the City Council of the City of Pawtucket as follows:

"Section 1. No city officer, official, agent or employee shall permit any person to examine any tax abatement record or any copy thereof, nor shall any such officer, official, agent or employee disclose the contents of any such record to any person, unless such person has permission of the City Council to examine such record.

"Section 2. This ordinance shall take effect upon its passage and all ordinances or parts of ordinances inconsistent herewith are hereby repealed."

Said ordinance was passed by the Common Council on January 23, 1948, and approved by the Mayor on the same day.

On January 22, 1948, attorneys for the plaintiffs addressed a letter (Ex. 3) to McAloon making a demand for said records. This letter was handed to McAloon in his office at the Pawtucket City Hall by Kelly during regular business hours on the same day at about 3:30 p. m.

McAloon said he had "no comment" when he received a telephone call about 1¼ hours later and was asked if he would comply with the request contained in said letter. No other request was made on McAloon and he did not reply to the letter.

On February 7, 1948, John H. Nolan, as Attorney General of the State of Rhode Island, and also as Attorney General on the relation of the Providence Journal Company, Brown and Kelly, and the last three in their respective individual capacities, filed a petition (M.P. No. 2806) for a writ of mandamus in the Superior Court for Providence County against defendants McCoy, Miss McCaughey, Donovan, Garvey, Murphy, Bigoness and McAloon to compel them to make available to the petitioners the tax abatement or cancellation information. (Ex. D)

The minutes of the Board of Aldermen of February 9, 1948, (Ex. 19) contain the following:

"The following communication is read and ordered filed:

February 7, 1948.

"Honorable Board of Aldermen
Pawtucket
Rhode Island

"Gentlemen:

"It has come to my attention that certain attorneys and individuals engaged in the examination of titles find it necessary to examine tax abatement records of the City of Pawtucket. It is also obvious that any member of the public who has a proper interest in such records should be permitted to see the same. Clearly, such persons should not be required to seek special permission each time the necessity for the examination of such records arises.

"In addition, it has come to my attention that The Pawtucket Times, a newspaper published in the City of Pawtucket, is desirous of examining these records for the purpose of publication in whole or in part as a public service.

"Accordingly, I have called your Honorable Body to meet in special session at this time (Monday, February 9, 1948 at five o'clock P.M.) to act upon resolutions pertaining to these matters.

"Respectfully,
"Ambrose P. McCoy,
"Mayor."

The date of this letter is significant. It bears the same date that the mandamus proceeding was filed in the state court and the record is clear that the attorney for the defendants acknowledged receipt of a copy of the mandamus petition on February 7, 1948.

On February 9, 1948, the Board of Aldermen and the Common Council of the City of Pawtucket, at special meetings of these bodies, passed a joint resolution providing as follows:

"Resolved, That the city council, under the provisions of an ordinance passed Jan. 23, 1948, entitled 'An Ordinance Relating to Tax Abatement Records,' hereby grants permission to any person himself or through his agent, engaged in the examination of titles or work of similar nature, to examine tax abatement records pertaining to such titles; Permission is also granted to any person having an interest in such records which is such as would enable him to maintain or defend an action for which such records can furnish evidence or necessary information, whether such interest is private, capable of sustaining a suit or a defense in his own personal behalf; or capable of sustaining a suit or a defense as the representative of the common or public right; and be it

"Further Resolved, however, that no person shall be permitted to examine such records for publication without the express permission of the city council, and be it

"Further Resolved, that this resolution shall take effect upon its passage."

This resolution was approved by the Mayor, February 9, 1948. Ex. 4.

Also, on February 9, 1948, the Board of Aldermen and the Common Council passed the following joint resolution:

"Resolved, that the City Council, under the provisions of an ordinance passed January 23, 1948 and entitled 'An Ordinance Relating to Tax Abatement Records' hereby grants permission to any duly authorized representative of The Pawtucket Times, a newspaper published in the City of Pawtucket, to examine and copy all tax abatement records for publication in whole or in part; and be it

"Further Resolved, that this resolution shall take effect upon its passage."

This resolution was approved by the Mayor on the same day. Ex. 5.

In M.P. No. 2806, supra, the Superior Court said:

"I.

"*Are The Records In Question
Public Records?*

"The records in question are the joint resolution abating or cancelling taxes which was passed by the City Council of the City of Pawtucket on December 31, 1947, and the certification as to the cancellation of taxes which forms a part of the tax list of the City of Pawtucket.

"There is no generally applicable statute in this State which defines what are and what are not public records. Therefore, the procedure herein is controlled by the principles of common law.

"In 45 American Jurisprudence, page 420, a public record is defined to be

"'one required by law to be kept, or necessary to be kept, in the discharge of a duty imposed by law, or directed by law to serve as a memorial and evidence of something written, said, or done * * *.'

"In re Caswell, 18 R.I. 835 [29 A. 259, 27 L.R.A. 82] our Supreme Court recognized that legislative, executive and judicial records at common law were public records.

"Taking the allegations of fact contained in the alternative writ as true and applying thereto the law above quoted, it is our opinion that the records in question are public records.

"II.

"*Are Said Records Open To Inspection By Members Of The Public In General And By These Petitioners in Particular?*

"Here again, since we have no statute in Rhode Island, we must resort to common law principles to determine *who* is entitled to inspect these records.

"The early common law doctrine is stated in In re Caswell, supra,

"'At common law, every person is entitled to the inspection, either personally or by his agent, of public records * * * provided he has an interest therein which is such as would enable him to maintain or defend an action for which the document or record sought can furnish evidence or necessary information. * * * but it will be sufficient that he act in such suit as the representative of the common or public right.'

"In the leading case of Nowack v. Fuller, 243 Mich. 200 [219 N.W. 749, 750, 60 A. L.R. 1351], the Court reviewed the modern American cases and came to the conclusion that the petitioner therein had not only a common law right to inspect the public records involved in that case but also could bring a petition for mandamus in his own name. The Court quoted with approval the following statement:

"'"I do not think that any common law ever obtained in this free government that would deny to the people thereof the right of free access to, and public inspection of, public records."

"'There is no question' the Court said: 'as to the common-law right of the people at large to inspect public documents and records. The right is based on the interest which citizens necessarily have in the matter to which the records relate. * * * So, in the instant case, the plaintiff as a citizen and taxpayer has a common-law right to inspect the public records in the auditor general's office, to determine if the public money is being properly expended. It is a right that belongs to his citizenship. * * *'"

"The authorities are clear that at common law the members of the public in general have the right to inspect public records."

 I agree with the Superior Court of this State that the records in question are public records. The reversal by the Rhode Island Supreme Court on May 26, 1950, Nolan v. McCoy, R.I., 73 A.2d 693 of said M. P. No. 2806 was based on other grounds and there is nothing in the opinion of the Supreme Court to indicate that it differs from the ruling of the Superior Court on the question of public records.

 The plaintiffs allege that jurisdiction is in this Court under Tit. 28 U.S.C.A. §§ 1331 and 1343. The provisions of § 1331 require that the matter in controversy exceeds the sum or value of $3,000. No evidence sustains the allegation that this controversy involves the requisite sum neither as to the value of the asserted right nor as to the damage sustained.

None of the plaintiffs sustained any monetary damages in this case. The record discloses that subsequent to this controversy Brown and Kelly received increases in salaries and that the circulation of the Evening Bulletin and the Sunday Journal increased. The circulation of the Provi-

dence Journal decreased but Brown testified that the decrease was not attributable to this controversy.

I, therefore, conclude that this Court lacks jurisdiction under § 1331. Hague v. C. I. O., 307 U.S. 496, 59 S.Ct. 954, 83 L. Ed. 1423; City of Manchester v. Leiby, 1 Cir., 117 F.2d 661.

 The jurisdictional requirements of § 1343 appear to be properly alleged by the individual plaintiffs, Hague case, supra, and also by the corporate plaintiff since it is a "person" within the meaning of the equal protection and due process of law clauses. Grosjean v. American Press Co., 297 U.S. 233, 56 S.Ct. 444, 80 L.Ed. 660. See also Bell v. Hood, 327 U.S. 678, 66 S. Ct. 773, 90 L.Ed. 939; Manchester case, supra. The complaint raises serious questions, both of law and fact, and it is not unsubstantial or frivolous. The defendants' motion to dismiss is denied.

Having decided that the plaintiffs are properly here, it is now necessary to consider those provisions of the Constitution of the United States and the Civil Rights Acts under which the plaintiffs allege they are entitled to relief.

 Even assuming that a conspiracy did exist between these defendants and that a proper demand for the records was made and refused, the plaintiffs here are not entitled to the relief prayed for on this phase of the case under R.S. § 1980, 8 U.S.C.A. § 47, inasmuch as they have failed to prove any damage which is the gist of a civil conspiracy suit. 11 Am.Jur., Conspiracy, § 45. See Schatte v. International Alliance, Etc., D.C., 70 F.Supp. 1008, affirmed 9 Cir., 165 F.2d 216. Nor are plaintiffs entitled to relief under R.S. § 1981, 8 U.S.C.A. § 48, having failed to prove damage and to show that reasonable diligence of any defendant could have prevented any wrong therein prohibited.

The plaintiffs, however, are entitled to redress under Amendment 14, Section 1 of the Constitution of the United States, which is as follows: "All persons born or naturalized in the United States, and subject to the jurisdiction thereof, are citizens of the United States and of the State wherein they reside. No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws."

Tit. 8 U.S.C.A. § 43 provides: "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress. R.S. § 1979."

 The plaintiffs have made out a case under the equal protection clause of the Constitution. Although the element of race discrimination does not enter into this case, the discrimination practised is so clearly state action and is so wilful and purposeful that I cannot escape the conclusion that these plaintiffs are denied equal protection of the laws. Had the course of conduct of certain defendants been less obvious in its purpose, authority and effect, I might have heeded the words of Chief Justice Stone in Snowden v. Hughes, 321 U.S. 1, 11, 12, 64 S.Ct. 397, 403, 88 L.Ed. 497, where he said: "A construction of the equal protection clause which would find a violation of federal right in every departure by state officers from state law is not to be favored", or even the words of Justice Frankfurter in the same case 321 U.S. at page 16, 64 S.Ct. at page 405 where he said: " * * * The problem (of whether or not an official's action is state action) is beset with inherent difficulties and not unnaturally has had a fluctuating history in the decisions of the Court. * * * It is not to be resolved by abstract considerations such as the fact that every official who purports to wield power conferred by a state is pro tanto the state. Otherwise every illegal discrimination by a policeman on the beat would be state action for purpose of suit in a federal court."

The prohibitions of the 14th Amendment, § 1 of the Constitution and the Civil Rights Acts provide for redress against state action and not for redress against individual action. Even unauthorized official action or misusing or overstepping authority may be state action. Hardyman v. Collins, D.C., 80 F.Supp. 501; Home Tel. & Tel. Co. v. City of Los Angeles, 227 U.S. 278, 33 S.Ct. 312, 57 L.Ed. 510; United States v. Classic, 313 U.S. 299, 61 S.Ct. 1031, 85 L.Ed. 1368, and Screws v. United States, 325 U.S. 91, 65 S.Ct. 1031, 89 L.Ed. 1495. The defendants are repositories of state power and their action is state action. Home Tel. & Tel. Co. v. City of Los Angeles, supra.

The denial of equal protection, therefore, entitles these plaintiffs to redress. The records are open to countless others and in fact to another competing newspaper. Such discrimination against these plaintiffs is arbitrary and capricious. Cf. Myerson v. Samuel, D.C., 74 F.Supp. 315. The guaranty of equal protection of the laws "is aimed at undue favor and individual or class privilege, on the one hand, and at hostile discrimination or the oppression of inequality, on the other." II Cooley's Const. Lim. (8th Ed.) p. 824.

There remains for consideration that part of the complaint concerning the alleged unconstitutional ordinance of January 23, 1948 and resolutions of February 9, 1948, quoted above. (Exs. 2, 4 and 5) The complaint prays for a judgment declaring the ordinance and resolutions unconstitutional. Apart from the fact that these city council enactments are the crowning achievement of the discrimination which we find to exist and aside from the apparently innocuous ordinance, it appears that the ordinance and the action in the form of two resolutions taken thereunder are an integral whole designed to violate the plaintiffs' constitutional guaranties of freedom of speech and of the press. No other reasonable conclusion can be drawn from the record.

A reading of the ordinance and the resolutions in chronological order, as set out above, when taken together with all the other evidence in the case, indicates their unconstitutional character especially in view of their discriminatory application. They are attempts to place restraints on publication which are adverse to our civil liberties. No person is permitted to examine such records for publication without the express permission of the city council. These enactments are not only capable of preventing publication by the plaintiffs, they have already been used to that end and may be so used again.

The defendants contend that these formal actions of the council are a proper exercise of the police power, that the presumption favors constitutionality, that there is no penalty attached to their violation, that they apply to all equally and are not void on their face, that the Journal has never asked for the city council's permission, and that there is no power to deprive the plaintiffs of their rights which are unchanged by the enactments. These contentions are without merit. They seek to becloud the issue of whether or not these enactments are designed and operate so as to deny any constitutional right.

The second paragraph of the resolution of February 9, 1948 (Ex. 4) is explicit and reads as follows:

"Further resolved, however, that no person shall be permitted to examine such records for publication without the express permission of the city council. * * *"

To my mind the plaintiffs properly object to such a restriction on publication. It appears to make discretionary and susceptible to arbitrary action something which before was merely ministerial, namely, giving permission to examine public records. However, what is more pernicious is the attempt to make the city council a licensing authority as to their publication. They have no relation to the promotion of order, safety, health, morals and the general welfare of society. 16 C.J.S., Constitutional Law, § 174.

Where such records as these are public records and where there is no reasonable basis for restricting their examination and publication, the attempt here to prohibit

their publication is an abridgement of the freedom of speech and of the press. They seek to place in the discretion of the city council the granting or denial of a constitutional right. See: Hague v. C.I.O., supra; Yick Wo v. Hopkins, 118 U.S. 356, 6 S.Ct. 1064, 30 L.Ed. 220; Schneider v. State of New Jersey, 308 U.S. 147, 60 S. Ct. 146, 84 L.Ed. 155; Lovell v. City of Griffin, 303 U.S. 444, 58 S.Ct. 666, 82 L. Ed. 949.

The absence of a penal provision is not controlling. The presence of such a provision adds deprivation to deprivation. The enactments were obviously directed at penalizing the plaintiffs by seeking to prevent publication except at the whim or will of the city council.

The fact that the plaintiffs did not apply under the enactments does not aid the defendants. The plaintiffs refrained from applying for permission because if it were granted they would be faced with the rule that "The Court will not pass upon the constitutionality of a statute at the instance of one who has availed himself of its benefits." Ashwander v. Tennessee Valley Authority, 297 U.S. 288, 348, 56 S.Ct. 466, 483, 80 L.Ed. 688.

Even if the enactments are not void on their face, their operation and effect are discriminatory and are an attempt to prevent publication by the plaintiffs.

The case of City of Manchester v. Leiby, 1 Cir., 117 F.2d 661, is relied on by the defendants but it is clearly distinguishable. In that case there was no discretionary or discriminatory action shown while here a wilful and purposeful discrimination is proved and the enactments on a whole clearly seek to restrict a constitutional right.

The evidence here sufficiently rebuts the presumption of constitutionality. Where a clear case of unconstitutionality is presented, it is the duty of the court to declare the law invalid. In re Bradford, D.C., 7 F.Supp. 665, reversed Bradford v. Fahey, 1 Cir., 76 F.2d 628, then affirmed 4 Cir., 77 F.2d 992.

In United States v. Dickey, 3 F.2d 190, 191, at pages 191, 192 affirmed 268 U.S. 378, 45 S.Ct. 558, 69 L.Ed. 1006, the District Court said:

"* * * but in this case the Congress attempted to regulate the manner of the publication of the lists. This was clearly a usurpation of power. It was not an incident to its power to tax, but obviously an attempt on the part of the Congress to say in what manner the people should acquire information made available to them.

"Moreover, if the enactment is susceptible of the construction given it by counsel for the government, the act would be a clear transgression upon the First Amendment to the Constitution which forbids an abridgment of the freedom of the press. In this view, the court is constrained to hold that the enactment is violative of the First Amendment to the Constitution and is void in law."

The Supreme Court in the Dickey case said 268 U.S. at page 387, 45 S.Ct. at page 559.

"* * * Information, which everybody is at liberty to acquire * * * in the absence of some clear and positive provision to the contrary, cannot be regarded otherwise than as public property, to be passed on to others as freely as the possessors of it may choose. * * *"

See also United States v. Baltimore Post Co., D.C., 2 F.2d 761, affirmed 268 U.S. 388, 45 S.Ct. 560, 69 L.Ed. 1009, where the inconsistency in the statute was decided in favor of publication although it was assumed Congress could for good reason maintain secrecy as to the records so long as no constitutional right was invaded.

The plaintiffs have not proved their case by a preponderance of the evidence against Murphy and Miss McCaughey and judgment may be entered for them.

An injunction may be entered enjoining Vincent J. McAloon, City Treasurer and Tax Collector, and all persons acting under or in concert with him, from withholding said tax cancellation resolutions and lists from the plaintiffs and from preventing the inspection of said records at all reasonable times during regular business hours.

Judgment may be entered in accordance with this opinion.